IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JEREMY ST. JULIAN,                §
                                  §
          Plaintiff,              §
                                  §
v.                                §      CIVIL ACTION NO. H-14-819
                                  §
CITY OF BAYTOWN, et al.,          §
                                  §
          Defendants.             §

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the court[1] are Defendants' Motion to Dismiss (Doc. 7), Plaintiff's Motion for Default Judgment (Doc. 9), and Plaintiff's Motion for Leave to File a Supplemental Complaint (Doc. 16).  The court has considered the motions, the responses, and the applicable law.  The court **GRANTS** Plaintiff's Motion for Leave to File a Supplemental Complaint.  For the reasons set forth below, the court **DENIES** Plaintiff's Motion for Default Judgment and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss.

## I.  Case Background

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 against a municipality, its police department, its police chief, and a police officer for violations of Plaintiff's constitutional rights under federal law and for violations of his common-law rights under state law.

---

[1]     The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docs. 10-12.

A.    __Factual Background__

On April 2, 2012, Defendant Luzette Watkins ("Watkins"), a Baytown police officer, initiated a traffic stop of Plaintiff's vehicle.[2] Plaintiff stopped and turned off his car's engine.[3] When asked, he provided Defendant Watkins with his driver's license and proof of insurance.[4]   Defendant Watkins explained that she had stopped Plaintiff for failing to signal when making a left turn.[5] Defendant Watkins asked Plaintiff if the car was his, to which he responded, "[N]o. [I]t was a space ship."[6]

Officer Brown, whose first name is not in the complaint, then approached Plaintiff and ordered him to get out of the vehicle.[7] Plaintiff asked why, but Officer Brown did not answer the question, instead repeating his order for Plaintiff to vacate the car.[8] When Plaintiff complied, Officer Brown escorted Plaintiff to the rear of his car and searched him, ostensibly for weapons.[9] Officer Brown arrested Plaintiff, handcuffed him, and put him in the back of

---

[2]    Doc. 1, Pl.'s Original Compl. p. 2.

[3]    __Id.__

[4]    __Id.__

[5]    __Id.__

[6]    __Id.__

[7]    __Id.__ pp. 2-3.

[8]    __Id.__ p. 3.

[9]    __Id.__

Officer Brown's police vehicle.[10]

The two officers proceeded to search Plaintiff's vehicle without seeking Plaintiff's permission.[11]   A third officer transported Plaintiff to the police station, where he was processed, issued an orange jumpsuit, and placed in an area with other arrestees.[12]   Plaintiff remained there until his family arrived to post bail.[13]   As he was being released, Plaintiff's personal items were returned, and he was given a citation for "failing to signal with turn indicator."[14]

The following day, Plaintiff received another citation in the mail for failing to maintain automobile liability insurance.[15]   The subsequent prosecution of the traffic citations was terminated in Plaintiff's favor.[16]   Defendant Keith Dougherty was chief of Defendant Department.[17]

**B.    Procedural Background**

Plaintiff, pro se, filed this action on March 31, 2014.[18]

---

[10]    Id.

[11]    Id.

[12]    Id.

[13]    Id.

[14]    Id.

[15]    Id.

[16]    Id. p. 5, Doc. 16, Pl.'s 1st Supplemental Compl. p. 1.

[17]    Doc. 1, Pl.'s Original Compl. p. 2.

[18]    See id. p. 1.

3

Defendants Dougherty and Watkins were served on May 19, 2014, and Defendants City of Baytown, Texas, ("City") and Baytown Police Department ("Department") were served on May 23, 2014.[19] Defendants filed a motion to dismiss on June 4, 2014.[20] On June 23, 2014, Plaintiff filed a motion for default judgment against all of the defendants.[21]

The parties consented to proceed before the undersigned, and the case was transferred on June 24, 2014.[22] Defendants responded to Plaintiff's motion on June 26, 2014.[23] Plaintiff requested and was granted an extension of time to respond to Defendants' Motion to Dismiss.[24] The court set a new deadline of September 2, 2014, for Plaintiff to respond to Defendants' motion.[25]

On August 28, 2014, the Clerk received a letter from Plaintiff requesting that the three attached documents be filed: a motion for leave to file a supplemental complaint, the supplemental

---

[19]    See Docs. 3-6, Proof of Service Forms.

[20]    See Doc. 7, Defs.' Mot. to Dismiss.

[21]    See Doc. 9, Pl.'s Mot. for Default J.

[22]    See Doc. 12, Order Transferring Case.

[23]    See Doc. 13, Defs.' Resp. to Pl.'s Mot. for Default J.

[24]    See Doc. 14, Pl.'s Mot. for Enlargement of Time to File a Written Resp. & Objs. to Defs.' Mot. to Dismiss; Doc. 15, Order Dated Aug. 19, 2014.

[25]    Doc. 15, Order Dated Aug. 19, 2014.

4

complaint, and a response to Defendants' Motion to Dismiss.[26]
Plaintiff did not indicate whether his motion for leave was opposed
or unopposed and did not include a certificate of conference.[27]  In
the motion, Plaintiff explained that he sought leave to supplement
"to advance claims apparent from the face of the complaint as the
supplemental facts and claims are connected to the original
pleading."[28]  Defendants did not file a response.[29]

The court now addresses the two pending dispositive motions,
beginning with Plaintiff's Motion for Default Judgment.

## II.  Plaintiff's Motion for Default Judgment

Federal Rule of Civil Procedure ("Rule") 55(a) allows for the
entry of default as follows:  "When a party against whom a judgment
for affirmative relief is sought has failed to plead or otherwise
defend, and that failure is shown by affidavit or otherwise, the
clerk must enter the party's default."

Plaintiff argues that Defendants were properly served in May
2014 but "wholly fail[ed] to file an answer or otherwise defend[]
or appear in this matter within twenty-one (21) days after being

---

[26]    See Doc. 16-1, Letter from Plaintiff to David Bradley Dated Aug. 22,
2014.  The Clerk filed all of the documents under the same docket entry number.
See Doc. 16, Pl.'s Mot. for Leave to File a Supplemental Compl., Pl.'s 1st
Supplemental Compl., & Pl.'s Written Resp. & Objections to Defs.' Mot. to Dismiss
("Pl.'s Resp.").

[27]    See Doc. 16, Pl.'s Mot. for Leave to File a Supplemental Compl.

[28]    Doc. 16, Pl.'s Mot. for Leave to File a Supplemental Compl. p. 1.

[29]    The response was due September 18, 2014.  The Local Rules for the
Southern District of Texas state that the "[f]ailure to respond [to a motion]
will be taken as a representation of no opposition."  L.R. 7.4.

served."[30]   Defendants respond that they timely filed a motion to dismiss.

Defendants Dougherty and Watkins were served on May 19, 2014, and Defendants City and Department were served on May 23, 2014. Defendants filed a Rule 12 motion to dismiss on June 4, 2014, within sixteen days of the date on which Defendants Dougherty and Watkins were served and within twelve days of the date on which Defendants City and Department were served.  A motion filed under Rule 12 alters the time required for the filing of an answer.  See Rule 12(a)(4).  If the court denies the motion, the answer must be served within fourteen days of the court's action, or, if the court allows the filing of a more definite statement, the answer must be served within fourteen days of the filing of the more definite statement.  Id.

Defendants appeared in this lawsuit and defended it by filing a motion to dismiss within twenty-one days.  Their actions complied with the plain language of both Rule 55 and Rule 12.  Other courts within the Fifth Circuit have reached the same conclusion.  See, e.g., Clark v. Commercial State Bank, No. MO-00-CA-140, 2001 WL 685529, at *1 (Bankr. W.D. Tex. Apr. 16, 2001)(citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1346 (1990 & Supp. 2000)).  Plaintiff's motion has no merit.

### III.  Defendants' Motion to Dismiss

---

[30]     Doc. 9, Pl.'s Mot. for Default J. p. 2 (emphasis omitted).

Rule 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted.  When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.  <u>Harold H. Huggins Realty, Inc. v. FNC, Inc.</u>, 634 F.3d 787, 803 n.44 (5th Cir. 2011)(quoting <u>True v. Robles</u>, 571 F.3d 412, 417 (5th Cir. 2009)).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. 678.  A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555.  In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. 678.

Defendants move for dismissal of all of Plaintiff's claims against all Defendants for the following reasons: (1) all of Plaintiff's claims against Defendant Department should be dismissed because it is not a separate legal entity from Defendant City; (2)

Plaintiff's claims under state law against Defendants Dougherty and Watkins should be dismissed pursuant to the election-of-remedies provision of the Texas Tort Claims Act ("TTCA");[31] (3) Plaintiff's claims under state law against Defendant City should be dismissed because they do not fall within the limited waiver of immunity in the TTCA;[32] (4) the claims under 42 U.S.C. § 1983 ("Section 1983") should be dismissed against Defendants Dougherty and Watkins in their official capacities because those claims are the same as the Section 1983 claim against Defendant City; (5) the Section 1983 claim against Defendant City should be dismissed because Plaintiff failed to identify an unconstitutional policy or custom of Defendant City and its relation to the alleged constitutional violations; (6) the Section 1983 claim against Defendant Dougherty in his individual capacity should be dismissed because he cannot be held liable for a subordinate's constitutional violations; and (7) Plaintiff's Section 1983 claims should be dismissed because the allegations do not state a constitutional violation.

## A.   <u>Claims Against Defendant Department</u>

Texas law determines whether Defendant Department has the capacity to sue or be sued.  <u>See</u> Fed. R. Civ. P. 17(b)(3); <u>Darby v. Pasadena Police Dep't</u>, 939 F.2d 311, 313 (5th Cir. 1991).  A municipal police department can be sued only if a city explicitly

---

[31]   <u>See</u> Tex. Civ. Prac. & Rem. Code Ann. § 101.106.

[32]   <u>See</u> <u>id.</u> at § 101.021.

8

granted its police department the authority to sue or be sued. <u>Crull v. City of New Braunfels, Tex.</u>, 267 F. App'x 338, 341 (5th Cir. 2008)(unpublished)(quoting <u>Darby</u>, 939 F.2d at 313).

Defendants contend that Defendant Department is not a separate legal entity from Defendant City and lacks the capacity to be sued. Plaintiff supplemented his complaint to add the allegation that Defendant City's charter designated Defendant Department "as an independ[e]nt entity capable of suing and being sued."[33]

Plaintiff is incorrect. Defendant City's Charter reserves to itself the authority to sue and be sued. <u>See</u> Baytown, Tex., Charter art. 1, § 3.[34] The Charter contains no provision granting Defendant Department the capacity to sue and be sued. <u>See, generally</u>, Baytown, Tex., Charter.

Thus, Plaintiff cannot maintain claims against Defendant Department.

### B.   <u>Tort Claims Under State Law</u>

A trial court lacks subject matter jurisdiction over suits against certain local governmental units unless the State consents to suit. <u>Tex. Dep't of Parks & Wildlife v. Miranda</u>, 133 S.W.3d 217, 224 (Tex. 2004). The TTCA outlines the tort liability of governmental units. <u>See</u> Tex. Civ. Prac. & Rem. Code Ann. §§

---

[33]   Doc. 16, Pl.'s 1st Supplemental Compl. p. 2.

[34]   Defendant City's Charter can be found online at https://library.municode.com/index.aspx?clientId=10022&stateId=43&stateName=Texas.

101.001–101.109.

Defendants raise two arguments for dismissal in their favor on the state-law claims.

1.   <u>Defendants Dougherty and Watkins</u>

The TTCA states, "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."  Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e).

Plaintiff's complaint raised state-law claims of false arrest, false imprisonment, and malicious prosecution against Defendant City and the individual defendants.[35]  As Plaintiff asserted the claims against both the governmental unit and its employees and Defendant City moved for dismissal, Texas Civil Practice and Remedies Code § 101.106(e) ("Section 101.106(e)") requires the dismissal of all of these claims against Defendants Dougherty and Watkins.[36]  <u>See</u> <u>Mission Consol. Indep. Sch. Dist. v. Garcia</u>, 253

---

[35]   <u>See</u> Doc. 1, Pl.'s Original Complaint p. 5.

[36]   Plaintiff argues that, because his claims against Defendant City are excluded from the TTCA's waiver, the claims against Defendants Dougherty and Watkins should not be dismissed.  Doc. 16, Pl.'s Resp. p. 4 (citing <u>Meroney v. City of Colleyville</u>, 200 S.W.3d 707 (Tex. App.–Fort Worth 2006, pet. granted), <u>vacated and remanded by agreement</u>).  The case cited by Plaintiff is no longer good law.  The 2008 decision of the Supreme Court of Texas in <u>Mission Consol. Indep. Sch. Dist.</u> is the controlling law.
Plaintiff also contends that Defendants' motion lacks the assertion as to who is moving for the dismissal of the individual defendants; thus, he asserts, it is the individual defendants themselves who are moving, which takes the claims against them out of the realm of Section 101.106(e).  <u>Id.</u> pp. 4–5.  This is a frivolous argument.

S.W.3d 653, 658-59 (Tex. 2008)(confirming that the bar is not limited to cases in which the claims fit within the TTCA's waiver but also covers those, such as intentional torts, that are expressly excluded from the statute's scope).

2. <u>Defendant City</u>

A Texas city is a "governmental unit" covered by the TTCA. Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(B). Generally, the TTCA waives immunity for property damage, personal injury and death caused by wrongful acts of employees if arising from the use of a motor-driven vehicle or from a condition or use of tangible personal or real property. <u>See</u> Tex. Civ. Prac. & Rem. Code Ann. § 101.021. No waiver of immunity is available for claims "arising out of assault, battery, false imprisonment, or any other intentional tort." Tex. Civ. Prac. & Rem. Code Ann. § 101.057.

Plaintiff alleged state-law claims of false arrest, false imprisonment, and malicious prosecution[37] against Defendant City. None of these claims fit within the TTCA's waiver of immunity.[38]

---

[37] Defendants include negligent training, negligent supervision, and intentional infliction of emotional distress in their list of state-law claims pled by Plaintiff. The court does not read Plaintiff's pleading to allege those causes of action. To the extent Plaintiff intended to allege negligent training and negligent supervision, those claims would not fit within Defendant City's waiver of governmental immunity. <u>See</u> <u>Tex. Dep't of Pub. Safety v. Petta</u>, 44 S.W.3d 575, 580-81 (Tex. 2001)(stating that claims of negligent training and negligent supervision do not involve the condition or use of tangible personal or real property). Intentional infliction of emotional distress ("IIED") is an intentional tort not subject to the waiver of governmental immunity. <u>See</u> <u>Stinson v. Fontenot</u>, 435 S.W.3d 793 (Tex. 2014)(including IIED in a list of intentional torts).

[38] Plaintiff conceded as much in his response stating that "his claims against the City of Baytown [are] excluded from the Texas Tort Claims Act's waiver" and that his "claims against the City of Baytown are nto [sic] ones[]

False imprisonment is specifically listed in the statute as excepted from the general waiver. <u>See</u> Tex. Civ. Prac. & Rem. Code Ann. § 101.057.  False arrest and malicious prosecution are also intentional torts subject to governmental immunity. <u>See</u> <u>Stinson v. Fontenot</u>, 435 S.W.3d 793 (Tex. 2014)(including "wrongful arrest" and malicious prosecution in a list of intentional torts).

The TTCA requires dismissal of all of the state-law claims against Defendant City.

## C.   <u>Constitutional Claims Under Section 1983</u>

A plaintiff can establish a prima facie case under Section 1983[39] for the deprivation of civil rights by establishing: (1) a violation of a federal constitutional or statutory right; and (2) that the violation was committed by an individual acting under the color of state law. <u>Doe v. Rains Cnty. Indep. Sch. Dist.</u>, 66 F.3d 1402, 1406 (5th Cir. 1995).  The statute creates no substantive

_____

firmly rooted within the provisions of the Texas Tort Claims Act."  Doc. 16, Pl.'s Resp. 5.
However, Plaintiff argues that the state-law claims against Defendant City should not be dismissed because Defendant City is subject to liability pursuant to Section 1983.  Doc. 16, Pl.'s Resp. pp. 2, 5-6.  Plaintiff misapprehends the law, confusing the waiver of immunity pursuant to Section 1983 with the TTCA's waiver of immunity.

[39]   The provision reads, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

rights but only provides remedies for deprivations of rights created under federal law.  Graham v. Connor, 490 U.S. 386, 393-94 (1989).

In his Original Complaint, Plaintiff alleged violations of his constitutional rights to be free from unreasonable searches and seizures, specifically referring to false arrest and false imprisonment.[40]  In his supplemental pleading, he provided a partial clarification:

> Defendant Luzette Watkins violated the Plaintiff's Fourth and Fourteenth Amendments to the United States Constitution to be free from unlawful and illegal search and seizure[] when Defendant Luzette Watkins instituted and conducted a search of the Plaintiff's vehicle without the Plaintiff's consent, probable cause, or reasonable suspicion that an offense had been committed or that the Plaintiff possessed contraband or items prohibited by both State and Federal law.[41]

The Fourth Amendment, applied to state actors through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  A temporary traffic stop constitutes a seizure within the meaning of

---

[40]   See Doc. 1, Pl.'s Original Compl. pp. 4, 5. Plaintiff also mentioned malicious prosecution in his original complaint but clearly pursuant only to state law.  See id. p. 5.  However, Plaintiff advances malicious prosecution as a constitutional claim in his response to Defendants' motion to dismiss.  Doc. 16, Pl.'s Resp. p. 6.  The court notes that the Fifth Circuit does not recognize an independent federal cause of action for malicious prosecution.  Deville v. Marcantel, 567 F.3d 156, 169 (5th Cir. 2009)(citing Castellano v. Fragozo, 352 F.3d 939, 945 (5th Cir. 2003)).  Rather, violations of specific constitutional rights occurring in relation to a "malicious prosecution" can be redressed pursuant to those individual constitutional protections and not under the broad category of malicious prosecution.  Deville, 567 F.3d at 169.

[41]   Doc. 16, Pl.'s 1st Supplemental Compl. p. 2.

the Fourth Amendment and, thus, must meet the constitutional imperative that it be reasonable.  Whren v. United States, 517 U.S. 806, 809-10 (1996).  Generally, a traffic stop is reasonable if the officer has "probable cause to believe that a traffic violation has occurred."  Id. at 810.  Probable cause is also the linchpin of constitutionality for searches and arrests incident to traffic stops.  See id. at 817 ("It is of course true that in principle every Fourth Amendment case, since it turns upon a 'reasonableness' determination, involves a balancing of all relevant factors.  With rare exceptions not applicable here, however, the result of that balancing is not in doubt where the search or seizure is based upon probable cause.").

The court understands Plaintiff's complaint to raise three constitutional violations, all based on the lack of probable cause.[42]  He alleged that the officers did not have probable cause to stop Plaintiff, to search his car, or to arrest him.  Defendants raise several arguments for dismissal in their favor on the Section 1983 claims.

1.  Defendants Dougherty and Watkins in Their Official Capacities

---

[42]     In his response, Plaintiff clarified that his allegations do not concern whether the officers had constitutional authority to arrest Plaintiff for a minor criminal offense without a warrant.  See Doc. 16, Pl.'s Resp. p. 9.  That issue was resolved by the Supreme Court in Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001), in favor of the constitutionality of a warrantless arrest "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence."  To the contrary, Plaintiff explained, in this instance, the officers took action when "there was no offense committed at all."  Doc. 16, Pl.'s Resp. p. 9.

In a 42 U.S.C. § 1983 suit against a government actor in his official capacity or against a governmental entity, the plaintiff is seeking to recover compensatory damages from the government body itself, and the suit should be treated as one against the government.  See Hafer v. Melo, 502 U.S. 21, 25 (1991); Goodman v. Harris Cnty., 571 F.3d 388, 395 (5th Cir. 2009).  In other words, "[t]he real party in interest in an official-capacity suit is the governmental entity and not the named official." Hafer, 502 U.S. at 25.

Here, the 42 U.S.C. § 1983 claims against Defendants Dougherty and Watkins in their official capacities are actually claims against Defendant City.  Because Plaintiff asserted identical claims against Defendant City, the 42 U.S.C. § 1983 claims against the two officers in their official capacities are unnecessary.

   2.   Defendant City

A city may be held liable under Section 1983 only for its own illegal acts, not pursuant to a theory of vicarious liability. Connick v. Thompson, __ U.S. __, 131 S. Ct. 1350, 1359 (2011).  To succeed on a claim under Section 1983, the plaintiff must demonstrate that the city "had some inadequate custom or policy that acted as the moving force behind a constitutional violation." Forgan v. Howard Cnty., Tex., 494 F.3d 518, 522 (5th Cir. 2007)(citing Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690-91 (1978)); see also Connick, 131 S. Ct. at 1359.  "Official

municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 131 S. Ct. at 1359.

Courts have recognized that, under limited circumstances, the failure to train or to supervise its employees may give rise to local-government liability under Section 1983. See id.; Zarnow v. City of Wichita Falls, Tex., 614 F.3d 161, 169, 170 (5th Cir. 2010). In failure-to-train cases, a plaintiff must prove the inadequacy of the procedures, the policymaker's deliberate indifference, and causation. Zarnow, 614 F.3d at 170.

A local government can be held liable only when its failure to train or to supervise amounted to deliberate indifference to the constitutional rights of its citizens. Connick, 131 S. Ct. at 1359 (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)). In order to show deliberate indifference by the municipality, a plaintiff must generally show a pattern of similar constitutional violations by untrained employees.[43] Connick, 131 S. Ct. at 1359. Where the question is not whether the officers received any training in the constitutional requirements, but whether the

---

[43]    In extreme circumstances, a single act by an officer may form the basis for liability if "the 'highly predictable' consequence of a failure to train would result in the specific injury suffered[] and . . . the failure to train represented the 'moving force' behind the constitutional violation." Roberts v. City of Shreveport, 397 F.3d 287, 295-96 (quoting Brown v. Bryan Cnty., Okla., 219 F.3d 450, 461 (5th Cir. 2000), but distinguishing Brown as a case in which the deputy received no training at all).

16

officers received adequate training, the plaintiff cannot rely on proof that additional training would have created a better officer or would have reduced the likelihood of a constitutional violation but must prove that the "officers were so untrained as to be unaware" of constitutional limitations. <u>Pineda v. City of Houston</u>, 291 F.3d 325, 333 (5th Cir. 2002); <u>see also</u> <u>City of Canton, Ohio</u>, 489 U.S. at 391.    The Supreme Court has cautioned, "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." <u>Connick</u>, 131 S. Ct. at 1359.

Here, Plaintiff alleged, based solely on the facts of his stop and arrest, that Defendant City failed to "adequately and properly instruct [and] train" officers "on the applicable standard of law" regarding: (1) probable cause for arrest under the Texas Code of Criminal Procedure Ann. arts. 14.01, 14.03, and 14.04[44] and the Fourth and Fourteenth Amendments; (2) false imprisonment; (3) malicious prosecution; and (4) civil rights violations under Section 1983.[45]   Except for malicious prosecution because it does not implicate constitutional concerns on its own, Plaintiff's allegations on the training deficiencies are sufficient to meet his burden of pleading municipal liability.   Plaintiff may be able to prove that deficiencies in these areas of training could lead to

---

[44]    These provisions cover the authority of peace officers to make arrests under various circumstances.

[45]    Doc. 1, Pl.'s Original Compl. p. 3.

violations of the types alleged and that Defendant City was deliberately indifferent to that risk.

Plaintiff also alleged that Defendant City provided inadequate supervision and failed "to adopt reasonable internal policies and procedures to ensure that only specific violations of State law under statutory provisions would warrant the arrest, detention, and prosecution of a Citizen of the United States."[46]   Plaintiff provided no factual support for either of these alleged policies, failing to identify what type(s) of policies were missing or in what way supervision was deficient that would have impacted Plaintiff's encounter with Defendant City's officers.[47]

Finally, Plaintiff alleged that Defendant City "ratified the actions, omissions, and conduct of its agents, servants, employees and representatives."[48]   The complaint contained no facts suggesting ratification of the officers' conduct.   Plaintiff alleged that the

---

[46]   Id.

[47]   A failure to adopt a policy may lead to municipal liability but only if it is deliberately indifferent, that is, "when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." Rhyne v. Henderson Cnty., 973 F.2d 386, 392 (5th Cir. 1992)(citing City of Canton, 489 U.S. at 390(discussing failure-to-train claims)).   Plaintiff's allegations regarding Defendant City's failure to adopt policies refer to state statutes and do not suggest that the absence of such policies likely would give rise to a violation of federal rights.   See Doc. 1, Pl.'s Original Compl. p. 3.

[48]   Id. p. 4.   Plaintiff states, in his response, that the policy-making authority was delegated to Defendant Dougherty but identifies no policy or pronouncement by Defendant Dougherty that was the moving force behind Plaintiff's alleged constitutional violations.   See Doc. 16, Pl.'s Resp. p. 8.

proceedings were terminated in his favor.[49]

Plaintiff's allegations of inadequate supervision, failure to adopt policies, and ratification do not state policies on which relief against Defendant City may be based.  See Twombly, 550 U.S. at 555 (a complaint must contain sufficient factual allegations to state a claim for relief that is "plausible on its face").

3.   Defendant Dougherty in His Individual Capacity

Supervisors cannot be held liable under any theory of vicarious liability.  Roberts v. City of Shreveport, 397 F.3d 287, 292 (5th Cir. 2005)(quoting Thompson v. Upshur Cnty., Tex., 245 F.3d 447, 459 (5th Cir. 2001)).  An official may be found liable under Section 1983 for a failure to supervise or train when the plaintiff can show that the supervisor failed to supervise or train the subordinate, that failure caused the violation of the plaintiff's rights, and that failure amounts to deliberate indifference. Goodman, 571 F.3d at 395.  The standard is based on that for municipal liability.  See id. (applying standards for municipal liability to a failure to train and supervise against an individual); Roberts, 397 F.3d at 293 (explicitly stating that the standard for failure-to-train allegations against supervisors is based on that for municipal liability).

To show that an official acted with deliberate indifference,

---

49      In his response, Plaintiff states that "[t]he charges against the Plaintiff were dismissed and/or terminated in favor of the Plaintiff."  Doc. 16, Pl.'s Resp. p. 9.  If the charges were dismissed, that would be some evidence of the absence of ratification.

a plaintiff must demonstrate that the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that he drew that inference.  <u>Goodman</u> 571 F.3d at 395.  As with municipal liability, the plaintiff generally must demonstrate a pattern of violations in order to establish deliberate indifference.  <u>Id.</u>

Against Defendant Dougherty, the claims are that he failed to supervise and train the officers.[50]  Plaintiff provided no factual detail specific to Defendant Dougherty's supervisory actions, which is fatal to the claim that he is liable for the failure to supervise.  <u>Cf.</u> <u>Twombly</u>, 550 U.S. at 555 (requiring "more than labels and conclusions").

On the other hand, Plaintiff provided more detail on Defendant Dougherty's alleged failure to train, listing the deficiencies addressed in the prior section on municipal liability:  (1) probable cause for arrest under the Texas Code of Criminal Procedure and the Fourth and Fourteenth Amendments; (2) false imprisonment; and (3) civil rights violations under Section 1983.[51]  If, in fact, Defendant Dougherty failed to train officers of

---

[50]   In his response to Defendants' motion, Plaintiff frames Defendant Dougherty's responsibility in these terms: "failure to intervene and stop such conduct of Defendant Luzette Watkins, or properly train was an act of supervision."  Doc. 16, Pl.'s Resp. p. 8.  The allegation about the failure to "intervene and stop" Defendant Watkins is not in Plaintiff's complaint and is not supported by anything in Plaintiff's complaint.  Therefore, it is not before the court.

[51]   Doc. 1, Pl.'s Original Compl. p. 3.  The court omitted malicious-prosecution training from this list of alleged training deficiencies for the reasons explained in the section on municipal liability.

Defendant Department in these areas, Plaintiff may be able to show that the failure to train caused the constitutional violations alleged and that Defendant Dougherty acted with deliberate indifference to that risk.

The constitutional claim against Defendant Dougherty for failure to train survives the pleading stage.

4.   Defendant Watkins in Her Individual Capacity

To hold a government official liable in her individual capacity under Section 1983, a plaintiff must allege facts sufficient to show that the official violated the Constitution through her own individual actions. Iqbal, 556 U.S. at 676. That is, either the officer was personally involved in the constitutional violation or his acts are causally connected to the constitutional violation alleged. Roberts, 397 F.3d at 291-92 (quoting Woods v. Edwards, 51 F.3d 577, 583 (5ᵗʰ Cir. 1995)).

Reading all inferences in Plaintiff's favor, as the court must do, Plaintiff alleged that Defendant Watkins was the officer who initially stopped Plaintiff and that she participated in the search of his car and (by inference only) the decision to arrest him. Plaintiff further alleged that he did not commit any traffic violation and that he provided Defendant Watkins with a copy of valid automobile insurance.   He described no actions in his complaint that appear to have given the officers probable cause to stop him, search his car, or arrest him.

The constitutional claims against Defendant Watkins in her individual capacity survive the pleading stage of litigation.

### IV.  Conclusion

Based on the foregoing, the court **DENIES** Plaintiff's Motion for Default Judgment and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss.  The remaining claims are illegal search and seizure under the Fourth and Fourteenth Amendment against Defendant City based on the failure to train in the areas of probable cause, false imprisonment, and civil rights violations; against Defendant Dougherty for the failure to train in the same three areas; and against Defendant Watkins for stopping, searching, and arresting Plaintiff without probable cause.

**SIGNED** in Houston, Texas, this <u>14th</u> day of October, 2014.

_____
U.S. MAGISTRATE JUDGE